```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
TRACEY ATTIS,                        :
                                     :
            Plaintiff,               :      07 Civ. 949 (JSR)
                                     :
       -v-                           :      OPINION AND ORDER
                                     :
SOLOW REALTY DEVELOPMENT CO. et al., :
                                     :
            Defendants.              :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

On February 9, 2007, plaintiff, a former employee at defendant Solow Realty Development Co. ("Solow Realty") filed this disability discrimination claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq. (McKinney 2007), and the New York City Human Rights Law ("NYCHRL"), New York City, N.Y., Code § 8-101 et seq. Following discovery, defendants Solow Realty, Sheldon Solow (the President and founder of Solow Realty), Steven Cherniak and Jennifer Bier moved for summary judgment on all claims. Subsequently, plaintiff voluntarily withdrew her claims against two of the four defendants, Steven Cherniak and Jennifer Bier. For the reasons stated below, the motion of the remaining defendants, Solow Realty and Sheldon Solow, is granted in part and denied in part.

The relevant facts, either undisputed or, where disputed, taken in plaintiff's favor, are as follows:

Plaintiff was hired by Solow Realty as its Chief Administrative Officer in November, 2005. Defendants' Rule 56.1 Statement ("D. 56.1") ¶ 33; Plaintiff's Rule 56.1 Counter Statement ("P. 56.1") ¶ 7.

In that capacity, plaintiff had ultimate responsibility for all of Solow Realty's human resources functions.  D. 56.1 ¶ 36; P. 56.1 ¶ 8.

Plaintiff, whose parents and two sisters died in a house fire when plaintiff was 14 years old, had for years suffered from recurrent depression, but not to the point where it had substantially limited her job performance or other life activities.  D. 56.1 ¶ 14-15, 24-32; P. 56.1 ¶ 4, 6.  However, on June 5, 2006, plaintiff's brother died from heart failure as a result of a cocaine overdose, D. 56.1 ¶ 55; P. 56.1 ¶ 21, upon which plaintiff suffered severe depression, stopped eating, and lost approximately 20 pounds.  See Affidavit of Seth M. Kaplan ("Kaplan Aff.") dated August 17, 2007, Exhibit A at 280:20-281:13.  Plaintiff's work performance was also affected, and between June 5 and June 23, she worked only six days.[1]  See Declaration of Kelly Ibrahim dated August 15, 2007, ¶ 9 and Exhibit B.

On June 23, 2006, plaintiff was back at work when she suffered an emotional breakdown.  D. 56.1 ¶ 70; P. 56.1 ¶ 27. Jennifer Bier, who was executive assistant to Sheldon Solow, called plaintiff's psychiatrist and told her plaintiff was having a breakdown.  Kaplan Aff., Exhibit A at 277:6-22.  Although plaintiff then left work to see her psychiatrist, she was told by Solow that she needed to take time off and that her job was safe.  Kaplan Aff., Exhibit A at 290:5-

---

[1] Plaintiff disputes the exact calculation and asserts that she might have been at work for 8 total days during this period, P. 56.1 ¶ 28, but the difference is immaterial to any issue in this case.

2

21. This message was repeated over the course of the next few weeks when plaintiff sought to return to work. P. 56.1 ¶ 16, 26. Among other things, Bier, Solow's administrative assistant, told plaintiff that plaintiff needed to go into a hospital to get treatment, that her job was secure, and that Solow only wanted her to get better. Id. at 282:20-283:7.

On July 6, 2006, plaintiff voluntarily checked herself into Columbia Presbyterian Hospital to seek treatment for depression. D. 56.1 ¶ 72-73; P. 56.1 ¶ 29. She spoke to Bier after checking into the hospital and asked if it was okay that she was there. Bier said that it was. Declaration of Thomas Ricotta ("Ricotta Decl.") dated August 31, 2007, Exhibit A at 296:24-297:25; Kaplan Aff., Exhibit A at 298:2. However, plaintiff received little or no treatment at Columbia Presbyterian and accordingly, after four days, she voluntarily checked herself out. D. 56.1 ¶ 72-73; P. 56.1 ¶ 29.

After leaving Columbia Presbyterian, plaintiff spoke to Bier and told her that she was not doing any better, that she was having thoughts of suicide, and that she had regained only a few pounds. However, she said she was ready to come back to work. Bier told plaintiff that Solow wanted her to gain more than a few pounds and that he wanted her to get the help she needed. See Kaplan Aff., Exhibit A at 306:8-308:18. Plaintiff also spoke with Solow directly, who told her that he was most concerned about her health and that she should not worry about her job. Id. at 309:13-310:8.

3

On or about July 16, 2007, plaintiff called Bier to let her know that she was considering voluntarily checking herself into Four Winds Hospital ("Four Winds"). See Ricotta Decl., Exhibit A at 312:9-12. She asked Bier if she should check into the hospital or just return to work. Bier responded that plaintiff had no choice because Solow would not take her back until she had been to a hospital and had gotten the treatment she needed. Id. at 313:2-20. Accordingly, on July 17, 2006, plaintiff voluntarily checked herself into Four Winds. D. 56.1 ¶ 78; P. 56.1 ¶ 29.

The very next day, however, defendants apparently changed their minds, because Bier, on or about July 18, 2006, told plaintiff that the company needed her back that day, and that if she could not return to work she would be replaced. D. 56.1 ¶ 81; P. 56.1 ¶ 31. Plaintiff told Bier that she could not come into work because she was in the hospital and would probably not be out for another 10 days. See Kaplan Aff., Exhibit A at 326:20-23, 350:7-10. Bier thereupon informed plaintiff that she was going to be replaced. D. 56.1 ¶ 82; P. 56.1 ¶ 31.[2]

Against this background, the remaining defendants argue, first, that plaintiff has not made out a prima facie case of discrimination,

---

[2] Plaintiff also testified that Bier told Tracey Dennis, an administrative assistant at Solow Realty, that plaintiff was "not coming back because she is not right, her head is not right." According to plaintiff, Dennis then relayed this statement to Stephanie DeWitt, another assistant at the Company, who then relayed it to plaintiff. Kaplan Aff., Exhibit A at 348:19-349:25. However, this statement, with its multiple levels of hearsay, is inadmissible and therefore may not be considered for the purposes of this motion.

4

either under the ADA or under the NYSHRL and the NYCHRL. All three statutes prohibit discrimination against disabled employees on the basis of their disabilities. Although, as discussed infra, the statutes differ in their definition of what constitutes a "disability," all three statutes are similarly analyzed under the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n. 1 (2d Cir.2000) (NYSHRL and NYCHRL); Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir.1999)(ADA). Under that framework, a plaintiff, in order to avoid summary judgment dismissing a disability discrimination claim, must first adduce sufficient admissible evidence to establish a prima facie case of defendant's liability. To establish such a prima facie case of disability discrimination, a plaintiff must show that (1) her employer is covered by the relevant statute [ADA, NYSHRL, or NYCHRL]; (2) she suffers from a disability within the meaning of the relevant statute; (3) she was qualified to perform the essential functions of her position, either with or without a reasonable accommodation; and (4) she suffered an adverse employment action under circumstances that at least suggest it was because of her disability. Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 149-50 (2d Cir. 1998). Once a plaintiff makes out this prima facie case, a rebuttable presumption of discrimination arises. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. See Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d

5

Cir.1998). If the employer articulates such a reason, the presumption of discrimination "simply drops out of the picture," St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993), and the burden shifts back to the plaintiff to show, without the benefit of any presumption, that, more likely than not, discrimination was a motivating factor in the employer's adverse decision. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 336-37 (2d Cir. 2000).

As to the first element, it is not disputed here that plaintiff's employer is covered by the relevant statutes. Defendants do make the related argument, however, that plaintiff is not covered by the ADA or the NYSHRL because she was "an independent contractor," and only employees, not independent contractors, are covered by those statutes. See Anyan v. New York Life Ins. Co., 192 F.Supp.2d 228, 238 (S.D.N.Y. 2002) (ADA); Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 113 (2d Cir. 2000) (NYSHRL). Whether an individual is an independent contractor or an employee requires application of the common law of agency, largely with reference to 13 factors laid out by the Supreme Court in Cmty for Creative Non-Violence v. Reid, 490 U.S. 730 (1989). Those are: "[1] the hiring party's right to control the manner and means by which the product is accomplished; [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's

role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party." Eisenberg, 237 F.3d at 114 (internal alteration omitted). Although no single factor is dispositive, at least in the context of employment discrimination statutes "the greatest emphasis should be placed on . . . the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks." Id. (internal quotation marks omitted). For this reason, "an employer-employee relationship exists if the purported employer controls or has the right to control both the result to be accomplished and the 'manner and means' by which the purported employee brings about that result." Hilton Int'l Co. v. N.L.R.B., 690 F.2d 318, 320 (2d Cir. 1982). With these principles in mind, it is clear that plaintiff has at least raised a genuine material issue of fact as to whether she was an employee at Solow Realty, since the facts she alleges support a finding that Solow Realty had the right to control the manner and means by which she accomplished her work, her work was part of the regular business of Solow Realty, and she did not seek any side work while employed at Solow Realty as she was "of the impression that she was prohibited from doing so." P. 56.1 ¶¶ 11, 13, 14; D. 56.1 ¶¶ 33-34. However, the defendants have raised sufficient questions in this regard to warrant submitting the issue to the jury.

Deferring for a moment whether plaintiff has made out the second element of a prima facie case, i.e., whether she suffers from a

7

disability within the meaning of the relevant statutes, the Court turns next to the third element, whether plaintiff was qualified to perform the essential functions of her position. Here, defendants argue that plaintiff cannot establish even a prima facie case because an essential function of her job was coming to work, which she undisputably failed to do after June 23, 2006. D. 56.1 ¶ 70; P. 56.1 ¶ 27. See, e.g., Ramirez v. New York City Bd. of Educ., 481 F.Supp.2d 209, 221-22 (E.D.N.Y. 2007) (where plaintiff took eighteen sick days in one school year, and the absences were due to a condition not recognized as a disability under the ADA, his excessive absences prevented him from demonstrating that he could perform "an essential function of his employment position-showing up for work") (internal quotation mark omitted); Scott v. Memorial Sloan-Kettering Cancer Ctr., 190 F.Supp.2d 590, 596-97 (S.D.N.Y. 2002) (where, nine months after she was injured, plaintiff had exhausted employer's short-term disability leave but admitted that she was in constant pain and could not return to work, "the ADA clearly does not require employers to hold positions open indefinitely as an accommodation to disabled employees"); Mescall v. Marra, 49 F.Supp.2d 365, 374 (S.D.N.Y. 1999) (school guidance counselor was not qualified for her position where she missed 41 days of school and no reasonable accommodation could have improved her attendance record because none of the absences were the result of her alleged mental disability); Daddazio v. Katherine Gibbs Sch., Inc., 1999 WL 228344 at *5-6 (S.D.N.Y. 1999)(where plaintiff was hospitalized, never informed his employer that he was ready and/or able to return to work, never

requested any accommodation, and a medical report indicated that he was totally disabled, plaintiff could not perform the essential functions of his job because he could not "regularly attend work").

However, a plaintiff can satisfy the third element if she can show that she is able to perform the essential functions of her job with a reasonable accommodation. Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 135 (2d Cir.1995). In this case, where prior to July 18 plaintiff herself sought to return to work and was repeatedly told that her employer demanded that she not return until she had received treatment, there is a genuine issue of material fact as to whether plaintiff would have been otherwise qualified to perform the essential functions of her job had she been granted on July 18 what her employer itself had only two days earlier asserted was a requirement of her job and what a fact-finder might conclude was a reasonable accommodation under the circumstances, i.e., a few additional days off to receive treatment at Four Winds. See Durrant v. Chemical/Chase Bank/Manhattan Bank, N.A., 81 F.Supp.2d 518, 522 (S.D.N.Y. 2000) (where plaintiff was hospitalized for depression, remained in in-patient psychiatric care for four months, and was fired while hospitalized, defendant had "failed to establish that there is no genuine issue as to whether plaintiff was a qualified individual in that she could have returned to work and performed the essential functions of her job had [defendant] afforded her a reasonable accommodation, i.e., an additional leave of reasonable duration"); Powers v. Polygram Holding, Inc., 40 F.Supp.2d 195, 197-201 (S.D.N.Y. 1999) (where plaintiff suffered from clinically

9

diagnosed manic depression, court held that leave of absence was an "appropriate form of reasonable accommodation contemplated by the ADA," and refused to hold that a seventeen week leave was unreasonable as a matter of law so as to make plaintiff unqualified for his job). See also 29 C.F.R. pt. 32, App. A(b) (with regard to ADA requirements for programs receiving federal financial assistance, "for employees or participants who become unable to perform the duties of their positions because of a physical or mental condition, recipients may be required to grant liberal time off or leave without pay when paid sick leave is exhausted and when the disability is of a nature that it is likely to respond to treatment of hospitalization.")

Defendants make much of the fact that plaintiff never expressly requested a "reasonable accommodation," but a reasonable finder of fact could construe her statement to Beir that she would return from Four Winds in approximately 10 days as such a request. Morever, plaintiff testified at her deposition that she kept Solow Realty constantly appraised of her mental status and repeatedly asked to return to work, rather than take time off, but was just as repeatedly told by Bier that she had no choice and was not allowed to return to work until she sought treatment, and that, in the meantime, her job was safe.[3] Therefore, plaintiff can hardly be faulted for failing

---

[3]Although a reasonable fact finder could easily find that Bier, in making these statements, was simply relaying instructions from Solow, defendants vociferously argue that Bier's statements are inadmissible hearsay and cannot be relied upon to defeat a motion for summary judgment. See, e.g., Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769

10

(if she did) to request the "reasonable accommodation" that was already offered to her by defendant. Thus, plaintiff has raised a genuine issue of material fact as to whether she was qualified for her position.

The fourth element of plaintiff's prima facie case is proffering evidence to suggest she suffered an adverse employment action <u>because of</u> her disability. <u>Reeves</u>, 140 F.3d at 154-56. This is also relevant to defendant's fall-back argument that, even if plaintiff has made out a prima facie case, she has failed, in response to defendants' evidence that plaintiff was fired for failing to come to

---

F.2d 919, 924 (2d Cir. 1985). They are incorrect. Under Federal Rule of Evidence 801(d)(2)(D), a statement is not hearsay when it is made by a party-opponent's "agent or servant concerning a matter within the scope of the agency or employment, [and] during the existence of the relationship." In order to show that a statement falls within this rule and is therefore not hearsay, the party seeking admission must show "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." <u>Pappas v. Middle Earth Condo. Ass'n</u>, 963 F.2d 534, 537 (2d Cir. 1992). Here, defendants do not dispute that Bier was an agent of Solow Realty or that the aforementioned statements were made while she was so employed. However, they dispute that Bier's statements related to a matter within the scope of her employment. <u>Cf.</u> <u>United States v. Rioux</u>, 97 F.3d 648, 660 (2d Cir. 1996). But while defendants are correct that there is no evidence to suggest that Bier was a significant participant in the decision making process concerning whether or not to terminate plaintiff or that employment decisions regarding plaintiff were within the scope of her employment, it is clear from the record that her acting as a messenger for Solow in contexts such as the instant one was entirely within the scope of her employment. Bier was not only Solow's executive assistant at the time the statements were made, <u>see</u> D. 56.1 ¶ 4; P. 56.1 ¶ 1, she was, by her own admission, the vehicle by which he relayed messages to plaintiff, <u>see</u>, <u>e.g.</u>, Kaplan Aff., Exhibit E at 46:14-16 ("I'm the messenger. It's Mr. Solow's company. I can only relay the message. That was my job."). See also D. 56.1 ¶ 85; P. 56.1 ¶ 31.

11

work, to show that defendants' proffered reason is pretextual and, more generally, that she has not proffered evidence "sufficient to sustain a reasonable finding that her dismissal was motivated at least in part by [disability] discrimination." Tomassi v. Insignia Fin. Group, 478 F.3d 111, 114 (2d Cir. 2007). Among much else, defendants note that, as plaintiff herself concedes, the defendants were very solicitous of her problem prior to July 18 when, according to defendants, business exigencies forced them to take a tougher stand. Indeed, plaintiff herself testified that Solow's emotional support after her brother died was "[a]bsolutely incredible." D. 56.1 ¶ 64; P. 56.1 ¶ 25. A number of people from Solow Realty, including Solow, Bier, and CEO Steven Cherniak, attended plaintiff's brother's wake. D. 56.1 ¶ 59; P. 56.1 ¶ 25. They also called plaintiff to check in on her almost daily. D. 56.1 ¶ 65; P. 56.1 ¶ 25. Solow Realty loaned plaintiff $15,000 to help pay for her brother's funeral costs. D. 56.1 ¶ 61; P. 56.1 ¶ 25. The company also agreed to pay for any of plaintiff's treatment that was not covered by her health insurance and paid her for the entire period during which she was absent from work following her brother's death, even though she had exhausted all of her paid leave entitlement. D. 56.1 ¶ 62-63; P. 56.1 ¶ 25. While all of this may well convince the ultimate fact-finder that defendants lacked any discriminatory animus, nonetheless, in the context of summary judgment, where every reasonable inference favorable to plaintiff must be indulged, it is insufficient to defeat the inference of disability discrimination that arises from plaintiff's testimony that defendants told her one

12

day that she would not be permitted to return to work until she had been to a hospital and gotten the treatment she needed and then fired her two days later when she could not return to work because she had been admitted to that same hospital. Therefore, plaintiff has raised a genuine issue of material fact as to whether her termination was motivated, at least in part, by her disability.

Returning now to the second element--whether plaintiff was in fact "disabled" in the statutory sense--one must distinguish between the ADA on the one hand, and the NYSHRL and NYCHRL on the others. For purposes of the ADA, a disability includes (1) a physical or mental impairment that substantially limits a major life activity; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). "To be substantially limited . . . an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198 (2002). A temporary impairment, standing alone, is not a disability. See, e.g., Adams v. Citizens Advice Bureau, 187 F.3d 315, 316 (2d Cir. 1999) (plaintiff's neck, back and knee injuries were not substantially limiting because plaintiff "proffered no evidence showing that, despite the temporary nature of his injury, he was substantially limited in major life activities as a result of that injury"); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 646 (2d Cir. 1998) (temporary impairment of seven months was, by itself, "too short [in] duration . . . to be

13

substantially limiting"); Thompson v. Fed. Reserve Bank of New York, 2004 WL 330243 (S.D.N.Y. 2004)("A disability under the ADA does not include temporary medical conditions, even if those conditions require extended leaves of absence from work because such conditions are not substantially limiting") (internal quotation marks omitted).

"A psychological impairment is substantially limiting only if it lasts for more than several months and significantly restricts the performance of one or more major life activities during that time." Lanci v. Arthur Anderson, LLP, 2000 WL 329226 at *5 n.2 (S.D.N.Y. 2000) (quoting EEOC Guidance on Psychiatric Disabilities & the ADA No. 915.002) (internal quotation marks omitted) (emphasis in original).  In that case, the court found that plaintiff's recurring impairment, Tourette's Syndrome, did not ordinarily constitute a disability because it did not substantially limit any major life activity, id. at *4, but that plaintiff's symptoms during the acute phase of his condition were severe and did substantially limit a major life activity.  Because plaintiff's severe episode lasted approximately eight months, the court held that plaintiff had at least raised a material issue of fact as to whether he was disabled within the meaning of the ADA.  Id. at *6.

In this case, although plaintiff testified that she has dealt with depression on and off for 20 years, there is no evidence that plaintiff's depression substantially limited any major life activity during most of this period.[4]  Instead, the evidence in the record

---

[4] The evidence establishes that plaintiff was in therapy on and off for several years following the death of her parents and

14

supports a finding that plaintiff's depression affected her ability to eat and sleep only during the severe depressive episode she suffered immediately after her brother's death. There is no evidence that this episode, or the substantial impairment of plaintiff's ability to eat and sleep, lasted beyond a few weeks. Therefore, because plaintiff can point to no record evidence of any major life activity that was substantially impaired for more than a few weeks, a reasonable jury could not find that she was disabled within the meaning of the ADA. See Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997) (where "plaintiff's underlying disorder [depression] will be a life-long condition," but plaintiff failed to adduce any evidence that the "acute, episodic depression" would be long term, and where plaintiff's last depressive episode required only a five week absence from work, plaintiff was, as a matter of law, not disabled within the meaning of the ADA). Plaintiff's ADA claim is therefore dismissed with prejudice.

New York, however, does not take such a hypertechnical view of actionable disability. Any "medically diagnosable impairment" is sufficient. Barr v. New York City Trans. Auth., 2002 WL 257823 at *8 (E.D.N.Y. 2002). See also Reeves, 140 F.3d at 155. The standard for what constitutes a disability under the NYCHRL is at least as

---

sisters and began seeing her current psychiatrist, Dr. Silverman, some years prior to beginning work at Solow Realty. D. 56.1 § 24-25; P. 56.1 § 6. However, plaintiff was not suffering from severe depression, seeking psychological help, seeing Dr. Silverman, or taking any medication during the two years immediately prior to her hiring at Solow Realty. D. 56.1 § 29-31; P. 56.1 § 6.

15

expansive as under NYSHRL. See, e.g., Sacay v. The Research Found. of the City Univ. of New York, 44 F.Supp.2d 496, 503 (E.D.N.Y.1999). Here, defendants do not dispute that plaintiff has at least raised a material issue of fact as to whether she suffers from a "medically diagnosable impairment" under those statutes. Consequently, plaintiff's claims of disability discrimination under NYSHRL and NYCHRL survive defendant's summary judgment motion.

Moreover, even though the dismissal of the ADA claim means that no federal-law claim remains, at this stage, on the verge of trial, judicial economy, convenience, fairness and comity all favor this Court's maintaining supplemental jurisdiction over the NYSHRL and NYCHRL claims. See Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004). See also Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir.1994) (when "the dismissal of the federal claim occurs late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair. Nor is it by any means necessary") (internal quotation marks omitted).

Accordingly, as previously scheduled, trial of these remaining claims against the remaining defendants will commence promptly on December 5, 2007 at 9 a.m.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
November 14, 2007